```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
                      MIDDLE DIVISION
```

KAREN BLYTHE-SMITH,                )
                                   )
    Plaintiff,                    )
                                   )
v.                                 )   CIVIL ACTION NO.
                                   )
                                   )   00-AR-2624-M
GADSDEN STATE COMMUNITY            )
COLLEGE,                           )
                                   )
    Defendant.                    )

## MEMORANDUM OPINION

Before the court is the motion of defendant, Gadsden State Community College ("Gadsden State"), for summary judgment against the complaint of plaintiff, Karen Blythe-Smith ("Smith") for her Title VII claim of gender discrimination and retaliation.

## Undisputed Facts

Gadsden State hired Smith as a part time instructor in 1986, elevated her to full time in 1990, and granted her tenure in 1993. In September 1999, Dr. Victor Ficker ("Ficker"), President of Gadsden State, appointed Richard Bennet as interim Registrar. On September 15, 1999, in objection to this appointment, Smith filed her first E.E.O.C. charge against Gadsden State, which received notice of the charge on September 30, 1999.

Soon after Smith's charge was filed, Jack Stephens resigned as Chair of the Business Division of Gadsden State and was replaced by his assistant, Dr. Steve Massengill. Instead of



appointing Smith as Assistant Chair, something Stephens had recommended, Ficker eliminated the Assistant Chair position. On February 18, 2000 Smith filed her second E.E.O.C. charge, in which she claimed that Gadsden State eliminated the Assistant Chair position in order to retaliate against her for filing her first E.E.O.C. charge and to discriminate against her on account of her gender. Gadsden State received notice of this charge on March 9, 2000.

Some time after March 9, 2000, Gadsden State sought to permanently fill the Registrar position. On June 8, 2000, after interviewing ten finalists, the recruiting and employment committee recommended to Ficker three persons, namely, Bennet, Rhea and Smith, stating no ranking of the three. On June 9, 2000 Ficker attempted to name Bennet permanently to the Registrar position. Six days later, Fred Gainous, ("Gainous"), Chancellor of the Alabama Department of Post-Secondary Education, wrote to Ficker to overturn Ficker's appointment of Bennet as Registrar, criticizing Ficker for making the appointment in a manner that placed the college in a "legally indefensible position" and directing Ficker either to hire one of the other top three finalists or to begin the search process anew. Ficker chose the former option and appointed Rhea as Registrar, passing over Smith, the other remaining finalist. Rhea is still the Registrar of Gadsden State.

The posting for the Registrar position stated that "[o]nly

complete application packages will be given consideration for employment." One required component of a complete package is "three current letters of reference that address this position." Rhea submitted three letters, but they did not specifically refer to the position of Registrar.

Following the retirement of the Chair of the Division of Business, Ficker appointed Smith as chairperson of the Division of Business. The appointment was made on June 23, 2000 and became effective on August 14, 2000.

### The Shuford Decree

Some time ago, Gadsden State, and all other Alabama Community Colleges, agreed to be bound by a consent decree known as the "Shuford Decree." While Smith refers frequently to the decree, neither she nor Gadsden State put it into evidence. Therefore, this court cannot read the decree itself to ascertain its meaning. It is not something as to which the court has judicial knowledge. At the risk of following the blind beggars who tried to learn what an elephant was only by touching it, this court must close its eyes to the actual text of the Shuford decree, and glean what it can from the trunk, tail and ear that it can feel.

During his deposition, Jim Pitchford, who is charged with insuring that Gadsden State complies with the Shuford Decree, agreed with the following statement: "if there is at least one

candidate who meets all of the listed qualifications and the requirements for submitting the application, then the decree...would be violated if a person was allowed to take that position who did not meet the listed qualifications and/or the stated requirements, correct?" Smith argues that the Shuford Decree prohibits Gadsden State from placing a male in an interim position and then using his service in the interim position as a reason to promote him to the permanent position. This court will not attempt to guess more than it has so far regarding the substance of the Shuford Decree, but notes that Smith has not brought an action, at least in this court, to enforce the Shuford Decree.

## **Discussion**

Smith prays for relief from discrimination she claims to have received when she was not appointed to the position of Assistant Chair of the Division of Business and when she was not appointed Registrar. Specifically, Smith claims that Gadsden State did not promote her to either position on account of her gender and it retaliated against her because of the E.E.O.C. charges she filed.

In order to establish a *prima facie* case of gender discrimination, Smith must prove (1) that she is a member of a protected minority; (2) that she was qualified and applied for the position; (3) that she was rejected despite these qualifications; and (4) another equally or less qualified

employee who is not a member of the protected minority was promoted. *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998). To survive summary judgment, Smith must present enough evidence to show that a reasonable jury could find that she satisfied all four of the above criteria.

It is undisputed that no one was promoted to the position of Assistant Chair of the Business Division. Because no one was promoted to the position, it is not true that another equally or less qualified employee not a member of the protected group was promoted. Because Smith cannot meet her burden imposed by requirement number four, the court must dismiss that claim.

Neither party disputes that Rhea, a female, therefore a member of Smith's protected group, was promoted to Registrar after the second selection. Even if this court were willing to second guess Ficker's determination that Rhea is more qualified than Smith, which this court is not willing to do, the fact remains that Gadsden State promoted to Registrar a member of the protected group. Smith, again, cannot meet her burden under criterion four, and her claim as to the Registrar position will not survive summary judgment. Smith cannot pursue a claim of discrimination for not being promoted when Bennet was selected because this court dismissed that claim in its order of December 18, 2000.

Because Smith's gender discrimination claims are due to be dismissed she is left only with her retaliation claims. As long

as a plaintiff had a good faith belief that he was discriminated against, he can maintain a retaliation claim even after the failure of an underlying sexual discrimination claim. *Gupta* at 586. Although Smith's Title VII claims cannot survive summary judgment, she brought them in good faith. In order to state a *prima facie* case of retaliation, a plaintiff must show that (1) he suffered an adverse action (2) that he engaged in a protected activity and (3) that there is a causal connection between the activity and the action. *Gupta* at 587. Smith cites two incidents of alleged retaliation: the elimination of the position of Assistant Chair of the Business Division and the appointment of Rhea as Registrar.

Smith wanted the position of Assistant Chair not because she wanted it as a permanent position, but rather because she felt that it was a good stepping stone to the position of Chair of the Business Division. Gadsden State has since promoted Smith to Chair of the Business Division. She holds that position today. In anticipation of the obvious question "how was she harmed?" Smith argues that while she has the title of Chair, the position has been stripped of some of its administrative duties, and the position no longer generates leave time. In order for an act of the employer, other than an "ultimate employment decision" which this is not, to constitute Title VII retaliation harm, it "must meet some threshold level of substantiality." *Gupta* at 587 (internal citation and punctuation omitted). "A tangible

employment action constitutes a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a *significant* change in benefits." *Davis v. Lake Park*, 245 F.3d 1232, at 1239 (11th Cir. 2001)(emphasis in original, citation omitted).  Leave time is an economic benefit the loss of which a jury could reasonably find rises to the level of Title VII significance.  Furthermore, a reasonable jury could find that the reduction in administrative duties was a reassignment with significantly different responsibilities.  So, if the Chair position, as it existed before the revision, is a legitimate benchmark against which the newly revised Chair is to be compared, Smith would have established a *prima facie* case of retaliation.  Her complaint, however, is that she was retaliated against by not being given the Assistant Chair.[1]  The proper comparison, then, is between the old Assistant position and the new Chair position.  Smith has not presented evidence upon which a reasonable jury could find that being given the new Chair instead of the old Assistant Chair is an adverse action.  Because Smith cannot carry her burden on the third criterion, summary judgment for Gadsden State is due to be granted on her first retaliation claim.

---

[1] On January 22, 2001, this court dismissed her cause of action regarding Gadsden State's not promoting her to the Director's position.

The sole remaining claim left before this court is Smith's claim that the promotion of Rhea, instead of Smith, to Registrar was in retaliation for filing an E.E.O.C. charge. Not being promoted was the adverse action, and the E.E.O.C. charge is the protected activity. Like most retaliation claims, summary judgment depends on whether Smith has amassed enough evidence to permit a reasonable jury to find a causal connection between the E.E.O.C. charge and Gadsden State's passing over Smith in favor of Rhea.

In order to sustain her burden, Smith must show that "the decision maker[] [was] aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Gupta* at 590. (internal punctuation and citation omitted). Dr. Ficker knew of the E.E.O.C. charge. (Ficker depo. at 136.) To show that passing over Smith was not wholly unrelated to the E.E.O.C. charge, Smith argues that Gadsden State violated the Shuford Decree by promoting a male who had first been named as interim director. The argument continues that Gadsden State would violate the Shuford Decree, and would place itself in a "legally indefensible position," only if it was motivated by retaliatory animus. Smith further argues that this animus is the only reason Ficker promoted Rhea, a candidate who did not satisfy the posted requirements for submitting a complete application when he could have promoted Smith, who did comply. Smith's arguments may be weak, but they are not so weak that they

fail to provide some circumstantial evidence upon which a jury could find that the two actions were related.  On this claim, and this claim only, summary judgment is not due.

The motion for summary judgment filed by Gadsden State is due to be granted on all claims except for Smith's claim that Gadsden State's failure to promote her to Registrar was an act of retaliation.

DONE this 30th day of October, 2001.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE